**Hobart ROSS and David J. Meraner, on behalf of themselves and all persons similarly situated, Plaintiffs,**

**v.**

**ALBANY MEDICAL CENTER, Albany Medical College, Albany Medical Center Hospital, Donna E. Shalala, in her capacity as Secretary of the Department of Health and Human Services, and Bruce Vladeck, in his capacity as Administrator of the Health Care Financing Administration, Defendants.**

**No. 95–CV–0513 (FJS) (RWS).**

United States District Court,
N.D. New York.

Feb. 28, 1996.

**198**

Brown & Seymour; Craig A. Landy, New York, NY (Whitney N. Seymour, Jr., of counsel), for Plaintiffs.

Bond, Schoeneck & King, Albany, NY (Hermes Fernandez, of counsel), for Albany Medical Defendants.

U.S. Department of Justice Civil Division, Washington, DC (Andrea Sharrin, of counsel), for Federal Defendants.

## DECISION AND ORDER

SCULLIN, District Judge:

### INTRODUCTION

Plaintiffs, Hobart Ross and David Meraner, bring this action on behalf of themselves and a potential class of Medicare beneficiaries [1] seeking to have declared illegal certain alleged practices of defendants Albany Medical Center, Albany Medical College, and Albany Medical Center Hospital (collectively "Albany Medical defendants"). More specifically, plaintiffs allege that the Albany Medical defendants charged Medicare beneficiaries fees that exceeded federal and state mandatory limiting charge statutes. Plaintiffs seek to recover any payments of these alleged overcharges to the Albany Medical defendants.

Plaintiffs also seek a judgment declaring unlawful the actions of Donna E. Shalala, Secretary, Health and Human Services ("HHS"), and Bruce Vladeck, Administrator of the Health Care Financing Administration ("HCFA") (collectively "federal defendants"). Plaintiffs allege that the federal defendants misstated the balances due on plaintiffs' Explanation of Medicare Benefits ("EOMB") forms, failed to include limiting charge information on EOMB forms, failed to cause the medical defendants to refund any overpayments, and generally failed to take enforcement action against the Albany Medical defendants for their alleged violations of the limiting charge provisions, all in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). Plaintiffs seek an injunction requiring the HCFA to identify any Medicare beneficiaries entitled to a refund, to calculate the amounts due, and to handle any related notices or correspondence.

Presently before the Court is a motion by the federal defendants to dismiss this action for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and a motion by the Albany Medical defendants to dismiss the action on three grounds: (1) res judicata; (2) statute of limitations; and (3) no private right of action under 42 U.S.C. § 1395w–4(g). Although only the federal defendants have raised the issue of standing, the Court will consider that issue with respect to all of plaintiffs' claims. *See U.S. v. Hays*, —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995) (court may address issue of standing at any time, not subject to waiver).

### DISCUSSION [2]

**Claims**

Plaintiffs Hobart Ross and David Meraner both underwent coronary bypass surgery at

---

1. Although this action was brought as a proposed class action, class certification was not considered by the Court.

2. The facts set forth in this section are gleaned from the allegations in the Complaint as well as the undisputed facts in the record. The Court will rely upon these facts in analyzing the argu-

the Albany Medical Center Hospital during the Summer of 1991. At that time, both plaintiffs were covered by Medicare Part B health insurance. The physicians in the Medical Center's Department of Anesthesia were non-participating Medicare physicians.[3] Because those doctors were non-participating providers, they were required to charge plaintiffs for their services in accordance with the provisions of 42 U.S.C. § 1395w–4(g), and N.Y.Public Health Law § 19. Those statutes prohibit non-participating physicians from charging Medicare beneficiaries more than 125% (42 U.S.C. § 1395w) and 115% (N.Y.Pub.Health Law § 19) of the Medicare recognized payment amount for the specific services rendered. Plaintiffs allege that the Albany Medical defendants violated both statutes by charging them in excess of these statutory limits for the anesthesia services provided to them.

Plaintiffs also claim that the defendant Secretary of Health and Human Services should have issued sanctions against the Albany Medical defendants for these violations pursuant to 42 U.S.C. § 1395w–4(g). Additionally, plaintiffs allege that the federal defendants are liable under the Administrative Procedure Act because they "directly violated the statute's letter and spirit by erroneously informing Medicare beneficiaries on the Explanation of Medicare Benefits forms ("EOMBs") [that] they were liable for the illegal charges."

While both plaintiffs claim that Albany Medical Center violated the aforesaid statutory protections by overcharging for services, there are some factual distinctions between their claims. Accordingly, the Court will discuss the factual background as to each individual plaintiff.

**Plaintiff Ross**

Plaintiff Hobart Ross underwent coronary bypass surgery on June 18, 1991 at Albany Medical Center Hospital. Following his operation, on June 20, 1991, he was issued a bill for the anesthesia services rendered during his operation. Garry Aff.Ex. A. This bill was issued by the Albany Medical Center's Department of Anesthesia, Medical College Physician's Group and was in the amount of $1,666.75. Complaint ¶ 22. Subsequently, Medicare approved $1,256.75 of that amount. *Id.*

The record indicates that, following Medicare's determination of Mr. Ross' approved amount for services, he contacted the hospital to challenge the amount of his bill. Garry Aff.Ex. A. Following several discussions, on February 14, 1992, the Hospital forgave $571.90 of plaintiff Ross' total bill, thereby leaving him responsible for a total of $1,094.85.[4] *Id.* Nevertheless, plaintiff Ross brings the present action alleging that the Albany defendants violated the federal and state statutes by initially overcharging him.[5] Additionally, plaintiff Ross claims that the federal defendants violated the Administrative Procedure Act by issuing a misleading EOMB.[6]

---

ments set forth below. *See Thompson v. Franklin*, 15 F.3d 245, 249 (2d Cir.1994) (district court may rely upon the complaint and undisputed facts in the record in deciding motion to dismiss for lack of standing).

**3.** Medicare Part B identifies participating physicians as those who bill Medicare directly for their services and accept Medicare's approved charge as full payment, receiving 80% from Medicare and 20% from the patient. *See* 42 U.S.C. § 1395u(b)(3)(B)(ii). Non-participating physicians are those who choose to bill their patients directly for 100% of their charge, with

Medicare reimbursing the plaintiff for 80% of the Medicare approved charge. *See Id.* at §§ 1395*l*(a)(1), 1395u(b)(3)(B)(i).

**4.** Although plaintiffs dispute the allegation that the hospital "forgave" $571.90 of Mr. Ross' bill, they do not point to any facts which support their position that this adjustment was not made. Pl. 7.1(f) at ¶ 3. The hospital records clearly indicate that his bill was discounted in the amount of $571.90. Garry Aff.Ex. A.

**5.** In the complaint, plaintiff Ross alleges that he was overcharged in the following amounts:

| | | |
|---|---|---|
| Federal Claim: | $1,666.75 − ($1,256.75 × 125%) | = $ 95.81 |
| State Claim: | $1,666.75 − ($1,256.75 × 115%) | = $221.49 |

**6.** Although plaintiff Ross asserts that the federal defendants violated the APA by issuing misleading EOMBs, the record does not contain a copy of the EOMB he was issued with regard to his

anesthesia claims. Nor does plaintiff allege how he may have been injured as a result of the

**Standing**

■ It is well settled that in order to properly invoke federal jurisdiction, a plaintiff must satisfy a three-part test.

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). "It is also mandatory that [these elements] must be satisfied throughout the course of adjudication by the courts." *Alexander v. Yale Univ.,* 631 F.2d 178, 183 (2d Cir.1980).

■ Although he concedes that he has not suffered any economic injury, Mr. Ross maintains that his claim should not be dismissed because he "seeks a declaratory judgment as to his right to not be charged above the limiting charge." Pl.Mem. p. 15, n. 11. Plaintiff Ross apparently seeks declaratory relief in this action because he believes that the Albany Medical defendants will reinstate his obligation to pay the $571.90 that was "forgiven" absent a declaratory judgment.

Pl.Mem. p. 15, n. 11. The Court, however, finds that the issuance of a declaratory judgment stating that plaintiff Ross is not obligated to pay any or all of the $571.90 that has already been forgiven would serve no useful purpose. *See Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). Furthermore, a fear that an obligation to pay may be reinstated is not sufficient to establish an "injury in fact." Thus, there being no injury, plaintiff Ross lacks standing to pursue this action and all of his claims must be dismissed. *See Alexander v. Yale Univ.,* 631 F.2d 178, 184 (2d Cir.1980) (no standing where alleged injury no longer exists).

**Plaintiff Meraner**

Plaintiff Meraner underwent coronary bypass surgery at the Albany Medical Center Hospital on July 19, 1991. Complaint Ex. B. As a result of the services performed during that operation, Mr. Meraner's anesthesia bill was $1,494.45.[7] Complaint ¶ 25. The Medicare approved amount for the anesthesia services received by Mr. Meraner was $1,142.42. *Id.* While the Complaint does not allege that Mr. Ross actually paid more than the Medicare approved amount, it does allege that Mr. Meraner paid the entire $1,494.45 that he was billed. Complaint ¶ 27. Accordingly, Mr. Meraner contends that he was overcharged in the following amounts:

| | | |
|---|---|---|
| Federal Claim: | $1,494.45 — ($1,142.42 × 125%) = | $ 66.43 |
| State Claim: | $1,494.45 — ($1,142.42 × 115%) = | $180.67 |

The record reflects that, following receipt of his bill from the Albany Medical defendants, Mr. Meraner sought judicial relief by filing an action against the Albany Medical defendants in New York State Supreme Court. Fernandez Aff. ¶ 3, Ex. A, (*Meraner v. Albany Med. Ctr., et al.,* No. 6275–92 (Sup.Ct., Albany County)). In the original complaint in that action, plaintiff Meraner alleged that the Albany Medical defendants committed fraud in their billing procedures.[8] Shortly after that action was filed, however, the defendants were granted summary judgment on the ground that plaintiffs' fraud claim was without merit. Fernandez Aff. ¶ 8. Subsequently, the Appellate Division, Third

issuance of a misleading EOMB. The federal defendants' motion with the respect to plaintiff Ross is therefore granted.

7. Mr. Meraner's original anesthesia bill was for $2,101.45. However, the Hospital ultimately forgave $607 of that amount, leaving a total bill of $1,494.45. Complaint ¶ 25.

8. More specifically, in the state court action the plaintiffs alleged that the Hospital misrepresented its bills by including non-service related charges in its medical services bills. This claim did not include allegations of Medicare overcharges.

Department, reversed this judgment, stating that summary judgment was not proper because "facts essential to justify opposition to [the] motion . . . [were] in the moving party's exclusive knowledge or control." *Meraner v. Albany Med. Ctr.*, 199 A.D.2d 740, 605 N.Y.S.2d 442 (3d Dep't 1993).

Upon remand, an amended complaint was filed, adding a claim that the Albany Medical defendants had violated N.Y. Public Health Law § 19 by charging its Medicare patients more than the statutorily prescribed maximum for anesthesia services, and at the same time moved for class certification. Complaint ¶ 22.[9]

Thereafter, the State Supreme Court transferred the action to Albany City Court due to the small amount in controversy. Fernandez Aff.Ex. B. Prior to trial in City Court, however, the defendants again moved for summary judgment on both the fraud claims and the New York Public Health Law § 19 claims. Plaintiff Meraner filed a cross-motion for summary judgment on the Public Health Law claims. *Id.* at ¶ 18. The City Court denied the motion as to the fraud claims and reserved decision on the motion with respect to the Public Health Law claims. *Id.* at ¶ 17. While these motions were pending, the instant action was filed in this Court.

Although the Albany City Court had not ruled on the motions for summary judgment at the time that the present motion was filed in the case at bar, it has subsequently done so. *See Meraner v. Albany Med. Ctr.*, CCC # 95–0331 (City Court of Albany, August 23, 1995) (Docket # 28). In its decision, the City Court found that the Albany Medical defendants had violated Public Health Law § 19 by charging plaintiff Meraner more than 115% of the Medicare approved amount for anesthesia services. *Id.* Accordingly, the court granted plaintiff Meraner's cross-motion for summary judgment and awarded him $180.00 plus interest.[10]

**9.** Class certification was ultimately denied by the Supreme Court, Albany County, and affirmed by the Appellate Division. *Meraner v. Albany Med. Ctr.*, 211 A.D.2d 867, 621 N.Y.S.2d 208 (3d Dep't 1995).

### Federal Defendants—12(b)(1) Motion to Dismiss

■ In support of their motion to dismiss, the federal defendants argue that the Court lacks subject matter jurisdiction because the plaintiffs do not have standing to pursue this action. While the federal defendants concede that both plaintiffs have satisfied the first element by alleging that they suffered an "injury in fact," the Court has already determined that plaintiff Ross has not suffered a legally cognizable injury and, therefore, has no standing to pursue his claims. However, the Court does agree that plaintiff Meraner's alleged overcharge and subsequent payment of that overcharge are sufficient to constitute "injury in fact," therefore, it must now address the second and third elements of standing as to him.

### Causal Connection

■ In order to establish the second element of standing, plaintiff Meraner must set forth facts that show a fairly traceable causal connection between his alleged injury and the actions of the federal defendants. The purpose of this element is to "insure that the injury alleged by a plaintiff is attributable to the defendant." *Garelick v. Sullivan*, 987 F.2d 913, 919 (2d Cir.1993). "The critical issue in applying the causation requirement is what constitutes a sufficient causal nexus for standing." *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir.1992).

In the case at bar, plaintiff Meraner has alleged two separate injuries: (1) the alleged overcharge and (2) his subsequent payment of the overcharge. As stated above, the government conduct at issue here is the issuance of an allegedly misleading and incorrect EOMB by the Health Care Financing Administration.

### Alleged Injury—"Overcharge"

According to plaintiff Meraner, the overcharges that he and others incurred are "fairly traceable" to the federal defendants'

**10.** The Albany City Court reduced this judgment by $135.00, an amount that Mr. Meraner admitted had been refunded to him by the Albany Medical defendants. *Meraner v. Albany Med. Ctr.*, CCC # 95–0331, (Docket # 28, pp. 3 & 13)

conduct because the EOMBs "expressly directed beneficiaries to pay amounts in excess of both the Federal and State limiting charge." Pl.Mem. at 10. In order to evaluate plaintiff Meraner's contention on this point, the Court must look to the procedures followed in the context of this case.

Pursuant to Medicare regulations, physicians who do not accept assignment from Medicare bill their patients directly for 100% of their charge. 42 U.S.C. § 1395 *l*(a)(1). Medicare, meanwhile, calculates what it deems to be the reasonable charge for the services rendered, and reimburses the patient 80% of that amount. *Garelick*, 987 F.2d at 915; 42 U.S.C. § 1395 *l*(a)(1). In the case at bar, the Albany Medical defendants, being non-participating providers, directly billed plaintiff Meraner for the anesthesia services rendered during his operation. As stated, plaintiff Meraner alleges that his bill contained charges that were in violation of federal and state law because they were in excess of the allowed Medicare limit.

Plaintiff Meraner argues that his alleged overcharge is "fairly traceable" to the conduct of the federal defendants because the issuance of the EOMB served to "aid and abet" the Albany Medical defendants in violating the law. In support of this argument plaintiff relies upon *Telephone and Data Systems, Inc. v. F.C.C.*, ("*TDS*") 19 F.3d 42 (D.C.Cir.1994), in which the court stated that "injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality." *Id.* at 47. In *TDS*, the court found that the plaintiff had standing to challenge an F.C.C. decision because the decision "affirmatively upheld the legality of the very [contract] provisions whose exercise [had] inflicted injury on [plaintiff]." *Id.*

■ Plaintiff's reliance upon *TDS* is misplaced, however, because the EOMB issued by the federal defendants in the case at bar did not "authorize" the alleged overcharge by the Albany Medical defendants, nor did it "establish[ ] its legality." The EOMB was issued solely for the purpose of explaining the benefits that plaintiff Meraner was entitled to under his Medicare coverage. It stated that plaintiff Meraner was "responsi-

ble for a total of $997.11, the difference between the billed amount and the Medicare payment." Complaint Ex. 2. While admittedly misleading, this language did not serve to "authorize" or "legalize" the alleged overcharge that had already been made by the Albany Medical defendants. *See Garelick*, 987 F.2d at 920 ("[a]ny increase in the amounts charged to ... patients would be the product of independent choices by physicians"). Accordingly, plaintiff Meraner has failed to establish a causal connection between his alleged overcharge and the acts of the federal defendants.

## Alleged Injury—"Payment of the Overcharge"

■ While the Court has concluded that plaintiff Meraner's alleged overcharge, itself, was not "attributable" to the conduct of the federal defendants, it must now determine whether his payment of those charges can be deemed to be "fairly traceable" to their conduct. Plaintiff argues that his payment of the overcharge is "fairly traceable" to the conduct of the federal defendants because he paid the full amount after he received his EOMB stating that he was "responsible for ... the difference between the billed amount and the Medicare payment." Complaint, Ex. 2. Mr. Meraner claims that the EOMB "directed him to pay an illegal amount which he had no obligation to pay," and therefore, his overpayment is attributable to the conduct of the federal defendants. Complaint ¶ 38.

This argument is undermined, however, by plaintiff Meraner's concession that he did not pay the alleged overcharge until he was "faced with the threat of legal proceedings" initiated by the Albany Medical defendants. Complaint ¶ 27. Accordingly, the Court finds that plaintiff Meraner's actual payment of the alleged overcharge was not attributable to the statements contained in his EOMB. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 74–75, 98 S.Ct. 2620, 2630–31, 57 L.Ed.2d 595 (1978) (challenged conduct must be "but for" cause of alleged injury). There being no causal connection between either of plaintiff Meraner's claimed injuries and the alleged conduct

of the federal defendants, this action must be dismissed for lack of standing.

## Albany Medical Defendants—Motion to Dismiss

### Res Judicata

As stated above, prior to the commencement of the instant action, plaintiff Meraner filed a state court action against the Albany Medical defendants alleging the same Public Health Law § 19 claim that is presently before this Court. While that action was pending, plaintiff Meraner and plaintiff Ross filed the instant action, alleging violations of both 42 U.S.C. § 1395w–4(g) and N.Y.Pub.Health Law § 19. Plaintiff Meraner was subsequently granted summary judgment in his state court action with respect to the Public Health Law § 19 claim and awarded $180.00 plus interest. *See Meraner v. Albany Med. Ctr., et al.*, CCC # 95–0331 (City Ct. Albany, August 23, 1995) (Docket # 28).

In light of the decision of the Albany City Court, plaintiff Meraner concedes that res judicata bars this Court from now addressing the Public Health Law claim. Pl.Opp.Mem. at 18. The Court, therefore, dismisses plaintiff Meraner's claim brought pursuant to New York Public Health Law § 19. *See Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir.1992), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993).

### Standing/Mootness

■ The Court will next consider whether the decision in plaintiff Meraner's state court action has now rendered his federal claim moot. As a result of the timing of that decision,[11] the Albany Medical defendants have not asserted the lack of standing due to mootness as a basis for their present motion to dismiss. The Court, however, may raise the issue of mootness, *sua sponte*, at any stage of the litigation. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *Pickering v. Langdon*, 1994 WL 568588 (N.D.N.Y.1994) (Munson, S.J.).

■ As discussed above, in order to have standing to pursue an action in federal court, a litigant must be able to establish that he or she has suffered an "injury in fact" throughout the entire course of the litigation. *Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir.1980). "This 'time element of standing' comes under the rubric of mootness doctrine." *Id.* Pursuant to that doctrine, a claim becomes moot "when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." *Id.*

In the case at bar, Mr. Meraner's state and federal claims against the Albany Medical defendants each sought a refund of the amount that he alleges he was overcharged. Because the federal and state statutes allowed the Albany Medical defendants to charge different amounts for the same services, the refund sought by Mr. Meraner on his federal claim differed from that on his state law claim. According to the complaint, Mr. Meraner is seeking a $66.43 refund on his federal claim and a $180.67 refund on his state law claim. Complaint ¶¶ 26 & 32.

■ While it is clear that Mr. Meraner is not precluded from seeking a refund under both 42 U.S.C. § 1395w–4(g) and Public Health Law § 19, it is equally clear that he is precluded from actually recovering under both of those statutes. *See Marfia v. T.C. Ziraat Bankasi*, 903 F.Supp. 463, 471 (S.D.N.Y.1995) ("double recovery" not permitted on different claims arising from same facts). Here, it is undisputed that plaintiff Meraner has already prevailed on his Public Health Law § 19 claim in state court and obtained a judgment in the amount of $180.00 plus interest against the Albany Medical defendants.[12] *See Meraner v. Albany Med. Ctr., et al.*, CCC # 95–0331 (City Ct. Albany, August 23, 1995) (Docket # 28). Accordingly, the Court finds that plaintiff's federal claim is moot because the judgment entered in Mr. Meraner's state court action has provided him with the maximum monetary relief

---

11. As indicated earlier, the state court decision was rendered subsequent to this motion being brought.

12. See note 10, supra.

requested in the present action.[13] *See People of the State of New York v. Seneci,* 817 F.2d 1015, 1017 (2d Cir.1987) (claim dismissed where separate state court action provided all relief requested in federal action); *Simpson v. Camper,* 974 F.2d 1030, 1031 (8th Cir.1992) (case was moot where state court granted "essentially the same relief" that was requested in federal action).

Accordingly, it is hereby

ORDERED, that the motion to dismiss by defendants Shalala and Vladeck is GRANTED; and it is further

ORDERED, that the motion to dismiss by defendants Albany Medical Center, Albany Medical College, and Albany Medical Center Hospital is GRANTED; and it is further

ORDERED, that this action be DISMISSED in its entirety.

**IT IS SO ORDERED.**

---

**13.** In light of the Court's conclusion that plaintiff Meraner's claim for damages under 42 U.S.C. 1395w–4(g) is now moot, it finds that there is no sufficient "case or controversy" to warrant a decision on his request for a declaratory judgment. *See Wilton v. Seven Falls Co.,* —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose it [is not] incumbent upon that court to proceed to the merits before ... dismissing the action.").